1
2
3
4
5
6
7
8
9          IN THE UNITED STATES DISTRICT COURT
10         FOR THE NORTHERN DISTRICT OF CALIFORNIA
11

| | |
|---|---|
| TIMOTHY PEOPLES, JR., H63933, ) | No. C 12-2163 CRB (PR) |
| ) | |
| Plaintiff(s), ) | ORDER REGARDING |
| ) | DEFENDANTS' MOTION FOR |
| vs. ) | SUMMARY JUDGMENT AND |
| ) | REFERRING MATTER TO |
| E. MAKELA, et al., ) | MAGISTRATE JUDGE FOR |
| ) | SETTLEMENT CONFERENCE |
| Defendant(s). ) | |
| ———————————————— ) | (ECF Nos. 159 & 177) |

18         Plaintiff, a state prisoner currently incarcerated at Centinela State Prison

19  (CSP), filed a First Amended Complaint (FAC) for damages under 42 U.S.C.

20  § 1983 alleging various violations of his federal rights while he was incarcerated

21  at Salinas Valley State Prison (SVSP).  In the FAC, plaintiff specifically alleges

22  that in retaliation for filing a grievance against Correctional Officer Makela on

23  March 9, 2011, Makela and correctional officers Asuncion, Delvillar, Crabtree

24  and Lopez assaulted him and caused him injuries on April 5, 2011 in violation of

25  his First and Eighth Amendment rights.  Plaintiff also alleges that on April 29,

26  2011, x-ray technician Miller covered up an x-ray showing that plaintiff had

27  suffered a broken arm during the April 5, 2011 assault in violation of his Eighth

28  Amendment rights.

Per order filed on December 30, 2015, the court screened the FAC pursuant to 28 U.S.C. § 1915A and found that, liberally construed, plaintiff's allegations against Makela, Asuncion, Delvillar, Crabtree and Lopez state a cognizable First Amendment claim for retaliation and a cognizable Eighth Amendment claim for use of excessive force. And liberally construed, plaintiff's allegations against Miller state a cognizable Eighth Amendment claim for deliberate indifference to serious medical needs.

Defendants now move for summary judgment on the ground that there are no material facts in dispute and that they are entitled to judgment as a matter of law. They also claim that they are entitled to qualified immunity. Plaintiff has filed an opposition and defendants have filed a reply. Plaintiff also has filed an "objection" to defendants' reply.[1]

**DISCUSSION**

A.    Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v.

---

[1]Plaintiff's motion for an extension of time (ECF No. 177) to file an objection to defendants' reply is DISMISSED as moot.

Cattrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial[, as is the case here,] the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."  Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings to demonstrate the existence of a genuine dispute of material fact by "citing to specific parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute."  Fed. R. Civ. P. 56(c).  A triable dispute of material fact exists only if there is sufficient evidence favoring the nonmoving party to allow a jury to return a verdict for that party.  Anderson, 477 U.S. at 249.  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law."  Celotex, 477 U.S. at 323.

There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 249.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Id. at 249-50.

B.    Analysis

Defendants argue that they are entitled to summary judgment and qualified immunity from plaintiff's three cognizable claims for damages under § 1983: (1) use of excessive force in violation of the Eighth Amendment; (2) retaliation in violation of the First Amendment; and (3) deliberate indifference to serious medical needs in violation of the Eighth Amendment.  Under Saucier v. Katz, 533 U.S. 194 (2001), the court must undertake a two-step analysis when a

3

defendant asserts qualified immunity in a motion for summary judgment.  The court first faces "this threshold question:  Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  533 U.S. at 201.  If the court determines that the conduct did not violate a constitutional right, the inquiry is over and the officer is entitled to qualified immunity.

If the court determines that the conduct did violate a constitutional right, it then moves to the second step and asks "whether the right was clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. at 201-02.  Even if the violated right was clearly established, qualified immunity shields an officer from suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he confronted.  Brosseau v. Haugen, 543 U.S. 194, 198 (2004); Saucier, 533 U.S. at 205-06.  If "the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense."  Id. at 205.[2]

### 1.    Use of Excessive Force

It is well established that the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319 (1986).  In the context of a prison official accused of using excessive force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

---

[2]Although the Saucier sequence is often appropriate and beneficial, it is not mandatory.  A court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case.  See Pearson v. Callahan,  555 U.S. 223, 236 (2009).

cause harm.  Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).  In determining whether the use of force was wanton and unnecessary, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.  Id. at 7.

Defendants argue that Makela, Asunsion, Delvillar, Crabtree and Lopez are entitled to summary judgment and qualified immunity on plaintiff's Eighth Amendment claim that they used excessive force against him on April 5, 2011. In support, defendants submit several declarations and documentary evidence showing the following facts:

On April 5, 2011, plaintiff was housed in the administrative segregation (ad seg) unit at SVSP.  Inmates housed in ad seg are required to be placed in handcuffs when being moved within the housing unit and one inmate must be escorted by at least two correctional officers.

At approximately 8:43 a.m., Makela and Asuncion arrived at plaintiff's cell to release him for morning yard.  Asuncion performed a body search of plaintiff and placed him into handcuffs.  The control booth officer then opened the cell door and plaintiff began exiting the cell as Asuncion held on to his arm.

But shortly after exiting his cell, plaintiff spat on Makela's face, broke free of Asuncion's grip and ran back into his cell.  Plaintiff then aggressively yelled at Makela, "every time that door opens you're gonna be getting something you stanky ass ho."  Makela Decl. (ECF No. 162) ¶ 4.

Makela activated her personal alarm and Asuncion ordered plaintiff to get on the ground in his cell.  Asuncion then instructed the control booth officer to close the cell door, but as the cell door began sliding close, plaintiff started

coming towards Makela and Asuncion.  Makela ordered plaintiff to get on the ground, but plaintiff did not comply.  Asuncion then "sprayed [plaintiff] from approximately 3 feet away with OC spray (also known as pepper spray) because of his failure to comply with orders and his threatening actions toward myself and my partner."  Asuncion Decl. (ECF No. 161) ¶ 6.  Plaintiff then returned to the back of his cell and the cell door was closed.

Delvillar, Crabtree and Lopez responded to the alarm at plaintiff's cell.  When they arrived, they found plaintiff in his cell in handcuffs.  Asuncion informed Lopez that pepper spray had been used on plaintiff because plaintiff had spat on Makela.  Lopez asked the control booth officer to give him a set of leg restraints and to open plaintiff's cell door.  After the cell door was opened, Lopez ordered plaintiff to back out of the cell and instructed Delvillar and Crabtree to place plaintiff "in the prone position on the ground so that he could be put into a spit mask and leg restraints."  Lopez Decl. (ECF No. 163) ¶ 4.  Once on the ground, Lopez placed plaintiff in leg restraints and Crabtree placed him into a spit mask.

Delvillar and Crabtree then "assisted [plaintiff] with standing up and escorted him to the front of the building."  Crabtree Decl. (ECF No. 164) ¶ 3.  After a nurse examined plaintiff in front of the building, Delvillar and Crabtree escorted plaintiff to "the H-wing shower so that he could be decontaminated with running water."  Id.

The nurse's examination of plaintiff did not find any injuries other than "O.C. Spray Exposure."  Lopez Decl. Ex. A (ECF No. 163-1) at 21.

Under defendants' version of the facts, no reasonable jury could find that Makela, Asuncion, Delvillar, Crabtree or Lopez used force maliciously and sadistically to cause plaintiff harm.  See Hudson, 503 U.S. at 6-7.  Asuncion

6

reasonably perceived a threat after plaintiff spat on Makela, made threatening comments towards her and began advancing towards her again.  And Asuncion used force to prevent plaintiff from again assaulting Makela (or himself) only after plaintiff ignored Makela's orders to get on the ground and stop advancing towards her.  Asuncion then proceeded to spray plaintiff with OC, causing plaintiff to retreat to his cell and allowing the control booth officer to close plaintiff's cell door.  Responding officers Delvillar, Crabtree and Lopez then entered plaintiff's cell, placed him in leg restraints and a spit mask, and escorted him to be evaluated by medical staff (who noted that plaintiff had suffered no injuries other than OC spray exposure) and then to decontaminate with running water.  See id. at 7; see also Clement v. Gomez, 298 F.3d 898, 903-04 (9th Cir. 2002) (no inference that official used pepper spray "maliciously and sadistically for the very purpose of causing harm" where undisputed facts showed that two bursts of pepper spray were used to quell fighting in cell and prisoners did not respond to officers repeated commands to "break it up;" allegation that final spray was dispersed after coughing and gagging was heard from the cell did not lead to contrary inference).

Plaintiff's version of the facts is very different, however.  In support of his claim of use of excessive force, plaintiff submitted a verified complaint, verified opposition,[3] declaration and documentary evidence showing the following facts:

On April 5, 2011, Asuncion prepared to release plaintiff for morning yard by performing a body search of plaintiff and placing him into handcuffs.

---

[3]Plaintiff's verified FAC (ECF No. 122) and opposition (ECF No. 170) may be treated as an opposing affidavit or declaration because plaintiff states under penalty of perjury that the allegations therein are true and correct, and the allegations therein (at least as to his use of excessive force claim) are based on his personal knowledge.  See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

"Shortly after being placed into handcuffs behind the back for the short distance to the yard cages, Asuncion notified the tower officer . . . to open plaintiff's cell door." Opp'n (ECF No. 170) at 7. "Once plaintiff's cell door was opened, and he was backing out under the restraint of C/O Asuncion, C/O [Makela] quickly appeared from around the front entrance of D-wing an[d] ran down to plaintiff['s] cell." FAC (ECF No. 122) ¶ 90. Makela then "began making threatening and obscene comments of intending to assault plaintiff." Id. ¶ 91.

Plaintiff turned back towards his cell and "stepped forward to re-enter his cell at which time C/O Asuncion released plaintiff['s] right arm to re-enter the cell." Id. ¶ 92. Asuncion then ordered the tower officer to close the cell door. The cell door closed while Makela "remained making threatening comments towards plaintiff." Id. ¶ 93.

Once the cell door was secured shut, plaintiff approached the food/cuff port "to be unhandcuffed." Id. ¶ 94. But "for no reason," id., and "without warning," Opp'n at 8, Asuncion "placed his OC pepper spray up to the food/cuff spray and sprayed plaintiff directly in the face while handcuffed behind the back posing no safety and security threat to either Asuncion or Makela," id. at 9. Plaintiff "turned around and was peppered-sprayed in the back of the head and neck causing instantaneous burning and bruising to all areas peppered-sprayed." FAC ¶ 94. Asuncion and Makela then ordered plaintiff to "prone out." Id. ¶ 95.

"Once plaintiff was lying on the floor prone out face down, handcuffed behind the back, and peppered sprayed," Asuncion and Makela ordered the tower officer to open the cell door. Id. ¶ 96. Asuncion and Makela "then dragged plaintiff out of the cell at which time Delvillar, Crabtree and Lopez appeared." Opp'n at 9. "Asuncion, Makela, Delvillar, Crabtree and Lopez [then] began taking turns standing and jumping on plaintiff's right leg and right arm while

8

making obscene gestures." Id.

The "assault went on for approximately three to four minutes."  FAC ¶ 99. During it, Asuncion, Makela, Delvillar, Crabtree and Lopez "stated to plaintiff that, 'you wish you would have withdrawn the 602 [grievance] now don't you.'" Id. ¶ 100.  Delvillar also "unnecessarily placed plaintiff in an 'armbar' hold while plaintiff remained handcuffed, pepper-sprayed, and still posed no threat to the defendants' safety or security while stating, 'we took you down.  You should have let the 602 go."  Id. ¶ 101.  Plaintiff "was eventually allowed to stand up at which time C/O Crabtree pushed plaintiff['s] head into the wall for no reason causing a bump on plaintiff's forehead."  Id. ¶ 102.  Crabtree and Asuncion "then placed plaintiff['s] right and left arms high above his back intending to break the left arm of plaintiff as well as the right arm [which] was broken by standing and jumping on with the other defendants."  Id.

Plaintiff sought medical treatment for his right arm and leg, but was only given "ibuprofin" because he was already on "methadone" for pain.  Id. ¶ 110. The nurse documented that plaintiff's arm was swollen, but plaintiff's right arm and leg also were bruised and discolored, and he complained of severe pain and numbness.  Plaintiff continued for months to experience "severe pain and suffering adversely affecting plaintiff's daily activities due to defendants['] . . . actions of assaulting plaintiff."  Id. ¶ 117.

When viewing the evidence in the light most favorable to plaintiff, a reasonable jury could find that Makela, Asuncion, Delvillar, Crabtree and Lopez used force "maliciously and sadistically for the very purpose of causing harm." Hudson, 503 U.S. at 6.  Even if the use of OC spray was justified to prevent a perceived threat to Makela's and/or Asuncion's safety, a reasonable jury could find that Asuncion's spraying plaintiff's face, back of head and neck after

1    plaintiff was locked in his cell and handcuffed behind his back amounted to

2    excessive use of force for the purpose of causing harm.  See Santos v. Gates, 287

3    F.3d 846, 853 (9th Cir. 2002) (even where some force is justified, amount

4    actually used may be excessive).  And a reasonable jury could find that Makela,

5    Asuncion, Delvillar, Crabtree and Lopez used excessive force for the purpose of

6    causing harm when they took turns standing and jumping on plaintiff's right leg

7    and right arm after plaintiff was dragged out of his cell face down on the ground,

8    handcuffed behind his back and pepper sprayed.  See Drummond ex rel.

9    Drummond v. City of Anaheim, 343 F.3d 1052, 1059 (9th Cir. 2003) (although

10   some force was justified in restraining mentally ill individual so he could not

11   injure himself or officers, once he was handcuffed and lying on ground without

12   offering resistance, officers who knelt on him and pressed their weight against his

13   torso and neck despite his pleas for air used excessive force).[4]

14        Makela, Asuncion, Delvillar, Crabtree and Lopez are not entitled to

15   summary judgment on plaintiff's Eighth Amendment excessive force claim.  Nor

16   are they entitled to qualified immunity at this stage in the proceedings.  Whether

17   defendants may be said to have made a "reasonable mistake" of fact or law

18   entitling them to qualified immunity, Saucier, 533 U.S. at 205, will depend on the

19   resolution of disputed facts and the inferences that may be drawn therefrom.  See

20   Santos, 287 F.3d at 855 n.12.  Until the jury makes such decisions, a court cannot

21

22        [4]Defendants' contention that plaintiff did not suffer any injury other than OC
     spray exposure does not compel a different conclusion.  Plaintiff has submitted
23   evidence showing that he suffered more than a de minimus use of force.  See Hudson,
     503 U.S. at 9-10 (use of force that is more than de minimus and/or use of force of a sort
24   repugnant to the conscience of mankind may violate 8th Amendment even if plaintiff
     did not suffer significant injuries).
25
          But a lack of significant injury may well limit the damages to which plaintiff
26   may be entitled if a jury were to find that defendants used excessive force in violation
     of the Eighth Amendment.
27

28                                      10

determine whether a reasonable officer could have mistakenly believed that the degree of force used was lawful under the circumstances.  See id.

    2.    Retaliation

        To prevail on a First Amendment retaliation claim, a prisoner must show:  (1) that a state actor took some adverse action against a prisoner (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the prisoner's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

    The prisoner must prove all the elements of a retaliation claim, including the absence of legitimate correctional goals for the conduct of which he complains.  Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).  But the prisoner need not prove a total chilling of his First Amendment rights; that his First Amendment rights were chilled, though not necessarily silenced, is enough. Rhodes, 408 F.3d at 569.

    Defendants argue that Makela, Asunsion, Delvillar, Crabtree and Lopez are entitled to summary judgment on plaintiff's First Amendment claim that, in retaliation for his filing a grievance against Makela on March 9, 2011, Makela, Asuncion, Delvillar, Crabtree and Lopez assaulted plaintiff on April 5, 2011. Defendants specifically argue that plaintiff has set forth no evidence that Makela, Asuncion, Delvillar, Crabtree or Lopez took adverse action against plaintiff "because of" plaintiff's protected conduct, or that the action they took did not advance legitimate penological goals.  The court disagrees.

    In the First Amendment context, a plaintiff creates a genuine issue of material fact on the question of retaliatory motive when he produces, in addition to evidence that the defendant knew of the protected speech, "(1) evidence of

11

proximity in time between the protected speech and the allegedly retaliatory decision, (2) evidence that the defendant expressed opposition to the speech or (3) evidence that the defendant's proffered reason for the adverse action was false or pretextual." Corales v. Bennett, 567 F.3d 554, 568 (9th Cir. 2009) (internal quotation marks and citation omitted). Plaintiff here does just that. In addition to setting forth facts showing that defendants knew that plaintiff had filed a grievance and tried to persuade him to withdraw it, plaintiff declares under penalty of perjury that, while Makela, Asuncion, Delvillar, Crabtree and Lopez were taking turns standing and jumping on his right arm and right leg, they stated, "'you wish you would have withdrawn the 602 now don't you.'" FAC ¶ 100. And when Delvillar proceeded to place plaintiff in an armbar hold, he added, 'we took you down. You should have let the 602 go." Id. ¶ 101. This is enough to create a genuine issue of material fact on the question of retaliatory motive. See Corales, 567 F.3d at 568.

Plaintiff also has set forth sufficient evidence to create a genuine issue of material fact on the question of whether defendants' actions advanced legitimate penological goals. Under plaintiff's version of the facts, Makela, Asuncion, Delvillar, Crabtree and Lopez took turns standing and jumping on plaintiff's right leg and right arm after plaintiff was dragged out of his cell face down on the ground, handcuffed behind his back and pepper sprayed. A reasonable jury could find that these actions did not advance legitimate penological goals. See Pratt, 65 F.3d at 806. Defendants are not entitled to summary judgment on plaintiff's First Amendment retaliation claim against Makela, Asuncion, Delvillar, Crabtree or Lopez.[5]

---

[5]Defendants do not specifically argue that Makela, Asuncion, Delvillar, Crabtree or Lopez are entitled to qualified immunity on plaintiff's retaliation claim. But even if

1             3.       Deliberate Indifference to Serious Medical Needs

2          Deliberate indifference to serious medical needs violates the Eighth

3 Amendment's proscription against cruel and unusual punishment. Estelle v.

4 Gamble, 429 U.S. 97, 104 (1976). A "serious medical need" exists if the failure

5 to treat a prisoner's condition could result in further significant injury or the

6 "unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d

7 1050, 1059 (9th Cir. 1992) (citing Estelle, 429 U.S. at 104), overruled in part on

8 other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th

9 Cir. 1997) (en banc); see also Hunt v. Dental Dep't , 865 F.2d 198, 200 (9th Cir.

10 1989) (dental care important medical need of inmates). A prison official is

11 "deliberately indifferent" if he knows that a prisoner faces a substantial risk of

12 serious harm and disregards that risk by failing to take reasonable steps to abate

13 it. Farmer v. Brennan, 511 U.S. 825, 837 (1994).

14          Negligence is not enough for liability under the Eighth Amendment. Id. at

15 835-36 & n.4. An "official's failure to alleviate a significant risk that he should

16 have perceived but did not, . . . cannot under our cases be condemned as the

17 infliction of punishment." Id. at 838. Instead, "the official's conduct must have

18 been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon

19 the constraints facing the official." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir.

20 1998) (citing Wilson v. Seiter, 501 U.S. 294, 302-03 (1991)). Prison officials

21 violate their constitutional obligation only by "intentionally denying or delaying

22 access to medical care." Estelle, 429 U.S. at 104-05.

23          Defendants argue that Miller is entitled to summary judgment on

24 plaintiff's Eighth Amendment claim that Miller was deliberately indifferent to

25 _____

26 they had, the genuine issues of disputed material facts in connection with this claim
make clear that qualified immunity would not be in order at this stage in the

27 proceedings. See Santos, 287 F.3d at 855 n.12.

28                                         13

plaintiff's serious medical needs by covering up an April 29, 2011 x-ray showing that plaintiff suffered a broken arm from the April 5, 2011 assault.  Defendants specifically argue that plaintiff has set forth no objective evidence that plaintiff suffered a broken arm or that Miller covered it up.  The court agrees.

In support of their motion for summary judgment, defendants submit a declaration and documentary evidence showing the following:

On April 29, 2011 plaintiff received x-rays of his right elbow and forearm. Miller does not recall taking the x-rays, but concedes that he may have taken them because he was working as an x-ray technician at SVSP at that time.  Dr. Pereles reviewed the April 29, 2011 x-rays and found that there was "[n]o evidence of fracture or dislocation" in either x-ray.  Miller Decl. (ECF No. 165) Ex. A (ECF No. 165-1) at 3, 4.

On October 7, 2011, plaintiff received an x-ray of his right shoulder.  Dr. Belen reviewed the x-ray and found that there was "[n]o evidence of acute fracture or dislocation."  Id. at 2.

Miller "never altered or covered-up an x-ray showing that an inmate had a broken bone."  Miller Decl. ¶ 7.  And Miller "was never informed that [plaintiff] had filed grievances against staff at [SVSP] and . . . did not take any actions towards [plaintiff] because of grievances he had filed against staff."  Id.

Defendants are entitled to summary judgment on plaintiff's claim that Miller was deliberately indifferent to plaintiff's serious medical needs by covering up that the April 29, 2011 x-rays showed that plaintiff suffered a broken arm from the April 5, 2011 assault because plaintiff has set forth no significantly probative evidence that Miller covered up any x-ray showing that plaintiff had suffered a broken arm.  Plaintiff's mere insistence that his arm was broken and that Miller covered it up is not enough to prevent summary judgment in favor of

defendants on plaintiff's deliberate indifference claim against Miller.  See <u>Rivera v. Nat'l R.R. Passenger Corp.</u>, 331 F.3d 1074, 1078 (9th Cir.) (conclusory allegations without independent evidence cannot defeat summary judgment), <u>amended</u>, 340 F.3d 767 (9th Cir. 2003); <u>Leer v. Murphy</u>, 844 F.2d 628, 634 (9th Cir. 1988) (same).  Nor is plaintiff's speculation that Miller's alleged cover up must have been in retaliation for plaintiff's filing grievances enough to prevent summary judgment in favor of defendants on any such retaliation claim against Miller.  See <u>Corales</u>, 567 F.3d at 568 (conclusory allegations of retaliation cannot defeat summary judgment).

**CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment (ECF No. 159) is GRANTED IN PART AND DENIED IN PART.  Defendants are entitled to summary judgment on plaintiff's deliberate indifference to serious medical needs claim (and arguable retaliation claim) against Miller.  But they are not entitled to summary judgment on the merits, or based on qualified immunity, on plaintiff's excessive force or retaliation claims against Makela, Asuncion, Delvillar, Crabtree or Lopez.

The court finds that a referral to a magistrate judge for settlement proceedings is in order and hereby REFERS this matter to Magistrate Judge Vadas for settlement proceedings.  All other proceedings are stayed.

/

/

/

/

/

/

15

A settlement conference shall take place within 120 days of the date of this order, or as soon thereafter as is convenient to Magistrate Judge Vadas' calendar.  Magistrate Judge Vadas shall coordinate a time and date for the conference with all interested parties and/or their representatives and, within ten (10) days after the conclusion of the conference, file with the court a report regarding the conference.

The clerk shall provide a copy of this order to Magistrate Judge Vadas.

SO ORDERED.

DATED: January 13, 2017

CHARLES R. BREYER
United States District Judge

G:\PRO-SE\CRB\CR.12\Peoples, T.12-2163.msj2.referral.wpd

16